# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## FIELDS v. GRENILS ET AL.

### February 2d, 1893.

ASSAULT AND BATTERY—*Instructions—Case at bar.*—Under the circumstances disclosed by the record in this case, the instructions asked for by the defendants and given, as set forth in the opinion of the court—

HELD :

> Were wholly unwarranted by the evidence and otherwise erroneous, and the verdict for the defendants should be set aside.

Error to judgment of circuit court of Middlesex county, rendered April 25th, 1891, in an action at law in which John H. Fields is plaintiff and Southey Grenils and John Grenils are defendants. The judgment being against the plaintiff, he brought the case here on writ of error. Opinion states the case.

*L. C. Bristow*, for plaintiff in error.

*T. G. Jones* and *Robert McCandlish*, for defendants in error.

FAUNTLEROY, J., delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of Middlesex county, rendered on the 25th day of April, 1891, in an action at law in which John H. Fields is plaintiff and Southey Grenils and John Grenils are defendants.

The suit is an action of trespass on the case for assault and

battery and shooting and wounding. After the evidence was all delivered, the court gave the following instructions:

" First. If the jury believe from the evidence that the defendants occupy the relation of father and son, then the court instructs the jury that either of them is justified in using such an amount of force as may be necessary to repel an assault upon the other.

" Second. The court further instructs the jury that if they believe from the evidence that the defendants did assault and shoot the plaintiff in the reasonably necessary defense of their own persons, and that the defendants were father and son, after one of the defendants (the father) had been first assaulted by the plaintiff; and if they further believe that the plaintiff was about to assault for the second time one of the defendants (the father), or if they believe that the defendants had reasonable ground to believe that the plaintiff was about to make such assault on either of them, and that they, the defendants, used no more force than was apparently necessary for such defense, then the jury should find the issues for the defendants.

" Third. If the jury believe from the evidence that the defendants made the assault on the plaintiff in the declaration mentioned, and that such assault was made under an honest belief that it was necessary in self-defense, and to prevent great bodily harm to themselves, or to either of them, and that the circumstances were such, at the time, as to cause a reasonably prudent and courageous man to entertain such belief, and to apprehend such harm, then the jury should find the defendants not guilty.

" Fourth. (Given for the plaintiff.) The court further instructs the jury that if they find for the plaintiff, they must take into consideration in. assessing his damages that he is entitled to such damages as result from loss of time and labor, expenses of medical services, bodily pain and suffering, and diminished capacity to work consequent upon the injury

received, and to damage done to his wearing apparel consequent upon the said assault."

The jury rendered a verdict for the defendants; which verdict the plaintiff moved the court to set aside as being contrary to the law and the evidence, and to grant to the plaintiff a new trial; which motion the court overruled, and entered judgment for the defendants according to the verdict.

The only assignment of error is the action of the court in giving the foregoing instructions, and refusing to set the verdict aside, and grant to the plaintiff a new trial.

The facts proved on the trial are all certified by the court. The record discloses that Southey Grenils, one of the defendants, is wharf agent for the steamers touching at and putting off and taking on passengers and freight at Grenils' wharf, in Middlesex county, on the Rappahannock river, in which wharf there was a breach or gap of ninety feet, near the outer end or pier-head of said wharf, which made it necessary for the said Grenils, wharf agent, to keep and use a boat to transport passengers, across the said breach or gap, to and from the steamers plying the Rappahannock river. About 12 o'clock on the night of the 12th day of April, 1889, the said Southey Grenils, agent for the said steamers at the said wharf, was in the pier-head or end of the wharf, where passengers get on and off the said steamers, when the plaintiff, John H. Fields, and his cousin, a female, came from the shore on said wharf to the breach or gap, (she expecting to take passage up the Rappahannock river on a steamer of the regular line, expected to arrive at the said pier-head of the said wharf on the coming morning of the 13th of April, 1889,) and called for said Grenils, agent, to transport them across the breach or gap in the boat kept for that purpose. Grenils responded to the call, but asked the plaintiff if he intended to take passage with his cousin on the steamer up the river. When he replied that he did not, Grenils told him that he had better not go

over the breach in the boat to the pier-head, as he (Grenils) could not put him back that night, and he would have to wait until he (Grenils) returned to the shore next morning, as he (Grenils) wanted to go to sleep after the arrival and departure of the Baltimore boat, on which his (the plaintiff's) cousin desired to take passage. The plaintiff said that he would wait, and thereupon he and his cousin got into the boat, and were carried by Grenils over the breach to the pier-bead. About 3:30 A. M. the Baltimore steamer arrived and departed, taking away the plaintiff's cousin. Grenils, the wharf agent, went into his room on the pier-head and laid down, when the plaintiff, desiring to get off the pier-head and over the breach, requested the agent, Grenils, to put him over the breach, so that he could go ashore. Grenils told him to let him alone, as he wanted to go to sleep. The plaintiff, shaking the agent (Grenils), demanded to be put ashore, when Grenils told him to desist, and go away, repeating his desire for sleep. The plaintiff left the room, when Grenils, acting upon his suspicion that the plaintiff would take the boat and go across the breach, and leave him without the means of carrying the United States mail to the shore, got up and went to the place where the boat was tied, and found the plaintiff untying the boat, and holding in his hand a piece of heart-pine wood, one inch thick, four feet long, and two and one-half inches wide. Grenils remonstrated with the plaintiff, telling him that he must not take the boat away; whereupon the plaintiff collared the defendant, Grenils, and severely shook him with his left hand, holding the piece of oyster-tong wood aforesaid in his right hand, offering to strike the defendant, Grenils, but did not strike him; whereupon Grenils agreed to carry the plaintiff in the boat across the breach, but telling him to wait till he could step back to his room. Grenils then went to his room and got an old knife, which had been used as a "Tyler's sword," and came back to the boat, and, telling the plaintiff

" we must not both jump into the boat at the same time, as it might upset the boat," he untied the boat, and simultaneously jumped in and shoved the boat off, leaving the plaintiff on the wharf; and when the plaintiff tried to hold the boat, in order to get in, Grenils used the knife, cutting at the plaintiff's hands, and thus prevented the plaintiff from getting into the boat. Grenils (the wharf agent) then crossed the breach, and tied the boat to the wharf, at the opposite end of the breach from the plaintiff, and went ashore to his store, and called his son, John Grenils, who was at the barn, and told him there was a very mad boy on the pier-head, and it was his duty, as wharf agent, to get him ashore, and requested said John Grenils to help him get him off. The defendant, Southey Grenils, as he and his son John walked along together, said to his son : " There is a very mad boy on the wharf and with a club, and he is going to kill one of us, or we have got to kill him, unless we can disarm him." The defendant, Southey Grenils, with a gun loaded with shot, and his son, John Grenils, with a pistol, went towards the breach on the wharf, and, when within two hundred yards of the point where the boat was left, they saw the plaintiff coming across the breach, in the half of a hogshead, and propelling it with the aforesaid piece of pine wood oyster-tong handle. The defendants, Southey Grenils and John Grenils, at the distance of ninety-eight yards, seeing the plaintiff trying to get up out of the boat upon the wharf, ordered the plaintiff not to get on the wharf with that club, when, the plaintiff not obeying the order, and still trying to get on the wharf, Southey Grenils fired at the plaintiff with his gun, striking him on the nose, head, and corner of the right eye, with four or five shots. The two Grenils then rapidly approached the boat, and Southey Grenils ordered the plaintiff to put that club down, saying : " You can't get on this wharf with that in your hand " ; which the plaintiff refusing to do, Southey Grenils said to John Grenils :

" John, you had better shoot. If he gets up here with that club in his hand, he will kill us." Whereupon John Grenils put his hand, holding his pistol, through an opening in the wharf, and fired the pistol at his lower extremities, and imbedded a leaden bullet three inches below the spine of the plaintiff, in the plaintiff's buttock, which bullet Dr. Hancock could not find or extract from the buttock of the plaintiff. The defendant, Southey Grenils, telling the plaintiff that he should never get on that wharf with that club in his hand, pushed the plaintiff down in the boat with the butt of his gun, after which the plaintiff laid down the piece of oystering handle (which he had used to propel his tub across the breach), got up on the wharf, and went to his home. It is proven that the plaintiff is a strong, muscular man, and that the defendant, John Grenils, is a strong, muscular man.

It is proven that the plaintiff (beside his injuries and his sufferings) had considerable expenses for medical treatment, medicine, and nursing, and for board, and had a new suit of clothes very much damaged, and could not follow his avocation as an oysterman for two months.

Upon this state of facts, certified by the court, we are of opinion that the verdict of the jury is plainly and egregiously wrong, and flagrantly in the teeth of the evidence and the law ; and that the trial court erred in refusing to set it aside, and in entering judgment upon it. As to the instructions which were given by the court, it is enough to say that they are wholly unwarranted by the evidence, are most artistically calculated to mislead the jury, and do not properly expound or apply the law of self-defense to the facts of the case in evidence.

Whatever motive or design the plaintiff may have conjectured or suspected the wharf agent, Southey Grenils, to have, in suggesting and trying to deter him from going in the boat across the breach, to the detached pier-head, with his female

charge, at that hour in the night, he certainly did only his duty in refusing to abandon her, and to allow her to be transported across the water to that detached pierhead, surrounded by the winds and the waves and the darkness of the night, with no ear to hear, no eye to pity, and no arm to save; and, after he had protected her until he had seen her safely departing on the Baltimore boat, he had the right to demand to be taken across the breach, in the boat for that purpose, by the wharf agent, whose appointed and paid duty it was to do it. The record does not reveal what provocation or necessity the plaintiff had for collaring the defendant, Southey Grenils, when he interfered to prevent him from untying the boat; but it does explicitly say that the plaintiff did not strike the said Grenils, and that the difficulty was settled by an agreement and express promise by Grenils that he would put the plaintiff across the breach, in the boat, to enable him to go ashore.    Instead of doing which, Grenils, under false pretense, went to his room, and returned to the boat armed with a knife or sword; and, telling the plaintiff not to get into the boat suddenly, lest he might upset it, jumped in himself, and pushed the boat off, assaulting and cutting at the plaintiff with the long knife to prevent him from getting into the boat; and then actually going across the water to the main-land portion of the wharf, and leaving the plaintiff at the pierhead, out in the river.    It is an offense against reason, and a perversion of law, to hold that two strong men (one armed with a shot-gun and a long knife and the other with a pistol, and both safely on the shore-end of the wharf) were acting in self-defense when they returned to the unarmed and struggling young man in the boat, and shot him in the face with the shot gun, and in the back with the pistol, and pushed him down into the bottom of the boat with the butt end of the shot-gun, wounded, as he was, although he had uttered no word, nor indicated the slightest purpose, of menace to either of them!

Opinion.

The facts proved plainly show that the two armed defendants made a violent, unprovoked, unlawful, and murderous assault, battery, and wounding upon the plaintiff, and outraged the public peace; and do not show a single fact or circumstance even tending to show that the plaintiff was menacing them, or either of them, or was in a situation to cause to them, or either of them, the slightest apprehension of any aggression, injury, or danger. Southey Grenils, after he had assaulted the plaintiff with a long knife, and thereby deterred him from getting in the boat, crossed the breach, and went to his store on the shore end of the wharf, armed himself further with a shot-gun, called the defendant, John Grenils, who, with a pistol, went with him a long distance back towards the end of the wharf, where they discovered the plaintiff paddling himself across the breach in a half hogshead with a piece of pine stick; and, at the distance of ninety eight yards, Southey Grenils shot the plaintiff in the face, and then John Grenils and he both rapidly covered the distance between them and the plaintiff, and John Grenils put his hand through an opening in the wharf, with his pistol, and shot the helpless and wounded man in the back, who was still trying to get out of the boat upon the wharf, and who, the record shows, did not utter a threat or even a disrespectful word. If, upon the facts certified by the court, any explanation or justification of the verdict found by the jury can be given, it will be found in the erroneous instructions which were given by the court.

Our judgment is that the verdict must be set aside, and the judgment of the circuit court of Middlesex county reversed and annulled, and the case remanded for a new trial, to be had in conformity with the views herein expressed.

LACY, J., *dissented.*

JUDGMENT REVERSED.